# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | | |
|---|---|---|
| Derrick HOUSTON, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 2:16-cv-04204-NKL |
| COUNTY OF BOONE, *et al.*, | ) ) ) | |
| Defendants. | ) | |

## ORDER

Pending before the Court is the Attorney Intervenors Edelman and Thompson, LLC's motion for summary judgment, Doc. 144, which is opposed by both Boone County and Insurer Intervenor Missouri Public Entity Risk Management Fund (MOPERM). For the following reasons, the motion is granted with respect to the County's unjust enrichment claim and denied with respect to the County's request to set aside the final judgment.

### I. Statement of Uncontroverted Material Fact[1]

On July 13, 2016, Plaintiff Derrick Houston filed a complaint against the County of Boone and six of its employees. Doc. 159, ¶ 1. Houston alleged constitutional violations and state law claims arising out of an incident on October 3, 2015 and claimed that the incident caused Houston to suffer spine injuries and paralysis. *Id*. Attorney Intervenors Edelman and Thompson represented Houston, and the County's insurer, Missouri Public Entity Risk Management Fund (MOPERM), assumed the defense for both the County and the individual defendants. *Id*. at ¶¶ 2–

---

[1] The facts cited are taken from the County and MOPERM's response in opposition to Attorney Intervenors' statement of uncontroverted material facts, Doc. 159, and the Attorney Intervenors' reply, Doc. 161.

3.

Parties were scheduled to make their initial disclosures by November 1, 2016, and complete discovery by August 1, 2017. *Id.* at ¶ 7. On November 1, 2016, Houston made initial disclosures, which identified six individuals with discoverable information regarding "pre- and post-injury life" and approximately 40 heath care providers. *Id.* at ¶¶ 7–10. Medical records provided by Houston indicated that as of October 31, 2015, he had "full strength in the upper extremities[,] 0/5 strength in lower extremities" and "absent sensation to light touch and pinprick below T2 and below," and that Houston had been diagnosed with an "incomplete T2 ASIA B Injury." *Id.* at ¶ 12.

On March 17, 2017, Houston was deposed. *Id.* at ¶ 19. The following exchange took place during the deposition:

> Q: Are you able to get up out of that chair and walk today---
> A: No, sir.
> Q: ---around the house?
> A: I wish I could. I really wish I could, man.
> Q: If you had something to lean on, can you stand and lean?
> A: No, sir.
> Q: What have the doctors told you about what you can expect down the road as far as improvement or no improvement?
> A: No improvement.

*Id.* at ¶ 22. The same day, Houston made a demand to settle his claims in exchange for payment equal to MOPERM's policy limits. *Id.* at ¶ 17. The demand letter stated it was open for 14 days and that the present value of Houston's estimated life care plan was $5.7 million, based on an enclosed report prepared by Craig H. Lichtblau. *Id.* at 18; Doc. 145-1, pp. 6–7 (Demand Letter).

On March 22 and March 23, MOPERM was advised regarding potential liability for acting in bad faith with respect to Houston's demand for settlement, as defense counsel was concerned that Houston was "trying to set up a bad faith claim." Doc. 159, ¶¶ 23–24, 28. Counsel advised that Houston's "prospects for recovering some ability to ambulate" was not known, but that "there is at least a 50% chance" that the County will be found liable, in which case there would likely be

2

a verdict in excess of the limits of MOPERM's insurance policy. *Id.* at ¶¶ 25–26, 33(d).

The County opposed settling the case, in part because it doubted Houston was paralyzed, but at least one individual defendant demanded settlement. *Id.* at ¶¶ 29–30. When MOPERM was deciding whether to settle, MOPERM considered other factors besides whether Houston could walk. *Id.* at ¶ 34. MOPERM also considered "the facts, the law, the location, the likability or believability of involved parties in trying to come to a reasonable conclusion." Doc. 145-4 (Weber Deposition), p. 67. At the time of settlement, counsel for the defendants had corresponded with, but not engaged, an expert to comment on liability and damages or review Houston's medical records, nor had the County interviewed or deposed any of the witnesses identified as having discoverable information. Doc. 159, ¶ 35; Doc. 145-2 (Berry Deposition), p. 208. Boone County never served interrogatories, requests for production of documents, or admissions. Doc. 159, ¶ 55.

Defendants sought an extension of time to respond to Houston's demand for settlement, but the extension was denied. Doc. 161, ¶ 1. Houston accepted an offer to settle his claims against all defendants in exchange for $2 million on April 5, 2017. Doc. 159, ¶ 38. On April 19, 2017, Houston signed a release, which stated, in part,

> 3. Basis for Settlement. It is understood and agreed that this settlement is the compromise of a disputed claim, and that the payment made is not be construed as an admission of liability on the part of the party or parties hereby released, and that said releases deny liability therefor and intend merely to avoid litigation and buy their peace. The undersigned hereby declares and represent that the injuries sustained are or may be permanent and progressive and that recovery therefrom is uncertain and indefinite . . . .

*Id.* at ¶ 39. Houston filed a notice of voluntary dismissal on May 22, 2017, and the Clerk's Order of Dismissal was entered the following day. Doc. 62; Doc. 63.

On April 25, 2017, Houston was captured on a body camera video at a hotel. Doc. 161, ¶¶ 2, 5. In the video, Houston is fully able to walk on his own without the aid of any mobility assistive device, there is no evidence he had an assistive device with him in his hotel room, and he is seen

3

carrying several bags out of the hotel room without assistance. *Id.* at ¶¶ 3–5. On June 5, 2017, the County's city counselor notified defense counsel of the encounter with Houston, and in July 2017, counsel notified the U.S. Attorney and hired an investigator to search for Houston's assets. Doc. 159, ¶¶ 41, 44–45.

## II. Procedure

On April 23, 2018, Boone County filed a motion seeking to set aside the judgment in this case pursuant to Federal Rule of Civil Procedure 60(b). Doc. 64. The judgment was entered after the plaintiff voluntarily dismissed the case based on a settlement the parties reached. Doc. 62. In an amended motion for relief, the County claims that Plaintiff procured the settlement through fraud and seeks to recover funds retained by Attorney Intervenors under an unjust enrichment theory.[2] Doc. 118. The County seeks to set aside the Clerk's Order dismissing this case, nullify the settlement agreement, recover any funds paid to the Attorney Intervenors, and have the case dismissed with prejudice.[3] *Id.*

Attorney Intervenors argue that summary judgment denying the County Rule 60(b) relief is appropriate because Boone County cannot establish that Houston committed fraud or that such fraud prevented the County from presenting its case, and Boone County did not seek relief within a reasonable period of time. Doc. 145. Attorney Intervenors also argue that, as a matter of law, Boone County's unjust enrichment claim fails. *Id.*; Doc. 169 (Supplemental Briefing). Plaintiff Derrick Houston has not made any appearance before the Court since the County filed its first Rule

---

[2] The original motion to set aside claimed that the Attorney Intervenors had participated in the fraud, but the amended motion omits allegations of fraud against the Attorney Intervenors. *Compare* Doc. 64 *with* Doc. 118.

[3] The County also requests an award of fees and costs associated with bringing the Rule 60(b) motion and an injunction that prohibits both the Attorney Intervenors and the Plaintiff from disposing of any settlement proceeds.

4

60(b) motion, and therefore, does not challenge any of the County's allegations.

**III.    Standard**

"Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. Durham D &M, LLC*, 606 F.3d 513, 518 (8th Cir. 2010); Fed. R. Civ. P. 56(a).  The Court must enter summary judgment "'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  However, courts give "the nonmoving party the benefit of all reasonable inferences which may be drawn without resorting to speculation." *Johnson v. Securitas Sec. Servs. USA, Inc.*, 769 F.3d 605, 611 (8th Cir. 2014).  Summary judgment is not appropriate when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**IV.    Discussion**

Attorney Intervenors argue that the County cannot show that Houston committed fraud or misconduct, but that even if it can, the County has failed to show that such fraud prevented it from fully and fairly presenting its case.  Doc. 145 (Suggestions in Support).  Attorney Intervenors also argue that the County's motion for relief was not timely, and that Attorney Intervenors are entitled to judgment as a matter of law with respect to the County's unjust enrichment claim. *Id.*; Doc. 169.

A.    <u>Rule 60 Motion</u>

Federal Rule of Civil Procedure 60(b)(3) permits a court to "relieve a party . . . from a final judgment, order, or proceeding for . . . fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party."  However, "Rule 60(b) 'provides for

5

extraordinary relief which may be granted only upon an adequate showing of exceptional circumstances.'" *Paige v. Sandbulte*, 917 F.2d 1108, 1109 (8th Cir. 1990) (citation omitted). Thus, "[t]o prevail on a Rule 60(b)(3) motion, the movant must show, 'with clear and convincing evidence, that the opposing party engaged in a fraud or misrepresentation that prevented the movant from fully and fairly presenting its case.'" *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 935 (8th Cir. 2006) (citation omitted). Additionally, a Rule 60(b)(3) motion must be filed within a reasonable period of time, but no more than one year of the final judgment. Fed. R. Civ. P. 60(c)(1).

Attorney Intervenors assert that there is insufficient evidence for the Court to conclude that any of these three requirements are met.

   1.   *Fraud or Misconduct*

Attorney Intervenors first argue the County's circumstantial evidence is insufficient to establish perjury by clear and convincing evidence. However, "[i]n both civil and criminal cases, circumstantial evidence is considered just as probative as direct evidence, and for that reason, circumstantial evidence may constitute evidence that is clear, unequivocal, and convincing." *United States v. Hirani*, 824 F.3d 741, 747 (8th Cir. 2016)). Therefore, the circumstantial nature of the County's evidence is not grounds for summary judgment.

Attorney Intervenors also argue that the County has not produced any evidence to show that Houston could in fact walk, or stand and lean, on the day of his deposition. However, a fact finder could reasonably infer that Houston lied during his deposition given the likelihood of the alternative—that Houston spontaneously and fully recovered from his purported catastrophic injuries in less than two months. Although Attorney Intervenors state that individuals who suffer from incomplete spinal cord injuries can and do regain the ability to walk, the County disputes the likelihood of such scenario, and has engaged an expert who testified that "Mr. Houston's ability

6

to walk in a near normal fashion [in April 2017] is not consistent with him being paraplegic and wheelchair bound the month before at the time of his deposition." Doc. 159-7 (Dubinsky Deposition), p. 73. This is also a conclusion that a lay person could reasonably reach, given the record.

Considering only the evidence currently before the Court, reasonable inferences could be drawn to find, by clear and convincing evidence, that Houston committed perjury. Because the Court must draw all reasonable inferences in favor of the nonmoving party, summary judgment on this basis is denied.

### 2. *Full and Fair Presentation*

Attorney Intervenors also argue that the County cannot establish that Houston's misconduct prevented the County from fully and fairly presenting its case because the County voluntarily settled the case before the expiration of the discovery deadline, without having investigated either liability or the extent of damages. Attorney Intervenors also argue that any reliance by the County on Houston's statements was unreasonable because the County's did a limited investigation and the County considered other factors besides Houston's perjury when it evaluated the County's risk.

First, the voluntary nature of the settlement does not, as a matter of law, establish that the County had a full and fair opportunity to present its case. *See White v. Nat'l Football League*, 756 F.3d 585, 595 (8th Cir. 2014) (holding that Rule 60(b)(3) applies to stipulated dismissals under Fed. R. Civ. P. 41(a)(1)(A)).

Second, a reasonable fact finder could find by clear and convincing evidence that Houston's testimony caused or contributed to cause the County's settlement decision. As is the norm, the County and MOPERM considered factors other than the alleged perjury before reaching a settlement. For example, the County considered the likelihood of an unfavorable jury panel, the

likeability of the parties, the likelihood of success on the issue of liability, the timing of Houston's demand for settlement, et cetera. Nonetheless, a reasonable fact finder could conclude that, but for the alleged perjury and misrepresentations, the defendants would not have settled. Whether Houston could walk was a key issue in the case and had Houston told the truth in his deposition, a fact finder could conclude that the defendants would not have settled for $2 million even given the other factors they considered. *See Quinn v. City of Kansas City*, 64 F. Supp. 2d 1084, 1091–93 (D. Kan. 1999) ("If plaintiff had not testified falsely, defendants would have had less incentive to settle the case and less risk of liability from their perspective."); *Ebersole v. Kline-Perry*, 292 F.R.D. 316, 322–23 (E.D. Va. 2013) (finding that movant was prevented from fully presenting defense when plaintiff improperly withheld evidence and made misrepresentations at trial that "would have helped Defendant bolster her defense" and closed off an avenue that "may well have led the defense attorneys to additional evidence").

Third, a reasonable fact finder could conclude that the County and MOPERM reasonably relied on Houston's alleged perjury and misrepresentations when it settled the case for the $2 million. The crux of Attorney Intervenors' argument to the contrary is that the County and MOPERM did not hire their own expert to investigate whether Houston was in fact paralyzed. However, Defendants already had a treating physician's diagnosis and Houston had presented an expert report that supported that diagnosis. Doc. 159, ¶¶ 12, 18. Houston also set a short time limit for its settlement demand, which defense counsel interpreted as an effort to set up a bad faith claim that could result in liability well beyond the limits of the County's insurance. *Id.* at ¶¶ 23–24, 28. For example, Houston's expert had opined that his life care plan alone would cost $5.7 million. Under such circumstances, a fact finder could conclude that Defendants reasonably relied on Houston's alleged perjury and that reliance was reasonable.

8

Furthermore, Attorney Intervenors have presented no evidence that Defendants would have been able to uncover the alleged perjury even if they had hired their own expert. Arguably, Houston had misled his own expert as well as his treating physician. Hiring yet another expert to evaluate Houston may not have uncovered the alleged perjury. At least in the context of summary judgment, absent some evidence that it was more likely than not that a third professional would have succeeded where two had failed, there is insufficient evidence to resolve the issue as a matter of law.

Accordingly, summary judgment on this basis is denied.

3. *Reasonable Period of Time*

Attorney Intervenors argue that summary judgment is appropriate because the County failed to bring its Rule 60 motion within a reasonable period of time. "What constitutes a reasonable time is dependent on the particular facts of the case in question." *Watkins v. Lundell*, 169 F.3d 540, 544 (8th Cir. 1999). Attorney Intervenors highlight that the County's city counselor and the County's attorneys knew that Houston was not paralyzed as early as June 5, 2017, Doc. 159, ¶ 41, and claims that the County had MOPERM's consent to proceed with a motion as early as November 2017. *Id.* at ¶ 47. According to Attorney Intervenors, the County has not provided an adequate explanation for why it waited until April 23, 2018 to file its initial Rule 60 motion. The County claims that the motion was delayed, at least in part, because the case had been referred to a federal law enforcement agency for an investigation, which was still pending in November 2017, and that the timing was reasonable because the investigation might have changed the nature of or need for the relief requested.

Based on this record, a fact finder could find that the County's decision to investigate before pursuing a motion for relief was reasonable and that the Rule 60 motion was timely filed.

Accordingly, summary judgment on this basis is denied.

B.  Unjust Enrichment

Finally, in supplemental briefing, Attorney Intervenors argue that the Court lacks authority to consider the County's unjust enrichment claim even if the Rule 60(b) motion is granted because ordering payment of their attorneys' fees would constitute affirmative relief not authorized under Rule 60(b).[4]  Doc. 169, p. 2.  For support, Attorney Intervenors cite *Adduono v. World Hockey Ass'n*, 824 F.2d 617, 620 (8th Cir. 1987).

In *Adduono*, the Eighth Circuit held that Rule 60(b)(6) did not provide authority for a court to impose sanctions against an attorney accused of committing misconduct in the original proceeding.  824 F.2d at 618–19.  In the underlying proceeding, the district court set aside the judgment after finding that the plaintiffs' attorney violated representations made in a settlement agreement.  The district court also imposed sanctions against the attorney and ordered the attorney to pay attorneys' fees incurred by the defendants.  In reversing the district court, the Eighth Circuit held that the district court "did not have authority . . . to impose sanctions against [plaintiffs' attorney] and award attorney fees to the [defendants]" because "Rule 60(b) is available . . . only to set aside a prior order or judgment.  It cannot be used to impose additional affirmative relief."  *Id.* at 620 (citation omitted).

The County and MOPERM argue that the unjust enrichment claim is not affirmative relief because it seeks equitable restitution and "it would be patently unjust" to set aside the judgment based on Houston's fraud while allowing Attorney Intervenors to retain the benefit conferred by that fraud.  Doc. 180, p. 5.  They highlight that Rule 60(b) "is designed to prevent injustice by allowing a court to set aside the unjust results of litigation," *White*, 756 F.3d at 596, and argue that

---

[4] Attorney Intervenors also argue they are entitled to judgment as a matter of law based on the merits of the unjust enrichment claim.  Doc. 145, pp. 21–23.  Because the Court lacks the authority to grant relief, the Court does not consider the merits of the unjust enrichment claim.

10

"a court granting relief under Rule 60(b) is given broad discretion as to the type of relief it might grant [and] express authority to 'impose just terms.'" *Conerly v. Flower*, 410 F.2d 941, 944 (8th Cir. 1969) (citing *Thorpe v. Thorpe*, 364 F.2d 692, 694 (D.C. Cir. 1966)).

However, the County and MOPERM read these cases too broadly. First, *White* did not speak to permissible relief under Rule 60(b), only whether the Rule applies to stipulated dismissals. 756 F.3d at 596. Second, the relief affirmed in *Conerly* was the district court's decision to reinstate a jury verdict, rather than merely set a new trial once the judgment was set aside. *Id.* at 943–44. The relief granted still pertained to the same controversy between the same parties for which the court's jurisdiction was originally invoked. *See id.* at 945. In this case, the requested relief is premised on a new legal claim sought against a new party. Thus, even though this claim is premised on principles of equity and only seeks restitution, the County's claim still amounts to affirmative relief relative to the prior proceedings in this case. *See Delay v. Gordon*, 475 F.3d 1039, 1046 (9th Cir. 2007) (concluding "*a fortiori* that Rule 60(b)(6) cannot be used to assert a new and distinct legal claim against a defendant that was not party to the original judgment").

Because the Court is without authority to grant the requested relief on a Rule 60(b) motion, the unjust enrichment claim is dismissed in this case without prejudice.

V. **Conclusion**

For the reasons set forth above, Attorney Intervenors' motion for summary judgment, Doc. 144, is granted in part and denied in part.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: April 30, 2019
Jefferson City, Missouri

11