# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| DERRICK HOUSTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 16-4204-CV-C-NKL |
| | ) |
| COUNTY OF BOONE, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

Pending before the Court is defendants Missouri Public Entity Risk Management Fund (MOPERM) and Boone County's[1] Second Amended Motion for Relief from Final Judgment, Order, or Proceedings, and Motion for Injunction (Motion). (Doc. 204). Plaintiff Derrick Houston does not oppose the Motion. The Court held a hearing on this matter on August 7, 2019, at which Defendant presented evidence. (Doc. 206). Plaintiff was sent notice of this hearing but failed to appear. (Docs. 198, 206, 212, Tr. 4:3-11). The Motion is now ripe for consideration. For the reasons that follow, it is recommended Defendant's Motion be granted as set forth in this Report and Recommendation.

## I. BACKGROUND

This case began when Plaintiff Derrick Houston sued Boone County and six of its employees, alleging an altercation with jail staff and delayed treatment thereafter caused Mr. Houston to suffer serious spine injuries and paralysis. (Doc. 159, ¶ 1). Boone County's insurer, MOPERM, assumed the defense of Boone County and its employees. *Id.* at ¶ 3.

During discovery, Plaintiff disclosed nearly five thousand pages of medical records to Defendant. *Id.* at ¶¶ 9-13. Plaintiff's medical records indicated in October 2015 that he had "full strength in the upper extremities[,] 0/5 strength in the lower extremities" and "absent sensation to

---

[1] Defendant MOPERM has filed a stipulation of dismissal seeking to dismiss co-defendant Boone County from the case. (Doc. 205). Boone County currently remains a named party in the lawsuit. For the sake of clarity, the term "Defendant" in this Report & Recommendation refers to both MOPERM and Boone County.

light touch and pinprick below T2 and below." *Id.* at ¶ 12. The records also reflected Mr. Houston had been diagnosed with an "incomplete T2 ASIA B Injury." *Id.* On March 17, 2017, Defendant deposed Plaintiff. *Id.* at ¶ 19. During the deposition, the following exchange took place:

> Q: Are you able to get up out of that chair and walk today---
> A: No sir.
> Q: ---around the house?
> A: I wish I could. I really wish I could, man.
> Q: If you had something to lean on, can you stand and lean?
> A: No, sir.
> Q: What have the doctors told you about what you can expect down the road as far as improvement or no improvement?
> A: No improvement.

*Id.* at ¶ 22. The same day, Plaintiff sent a demand letter to Defendant with an offer to settle his claims. *Id.* at ¶ 17. The essence of Plaintiff's offer sought a payout equal to the maximum policy limit of MOPERM. (Doc. 145-1, pp. 6-7). Plaintiff's demand letter estimated Mr. Houston's life care plan to be $5.7 million. *Id.* at p. 6. Plaintiff set the settlement offer to expire after fourteen days. (Doc. 159, ¶ 17).

At the time of the demand, Defendant had access to the reports of two medical experts provided by Plaintiff. (Doc. 208, p. 3). One was the January 2017 report of Craig H. Lichtblau, M.D. (Ex. D48, pp. 331-35 (Summary Report)). In the report, Dr. Lichtblau opined that Mr. Houston suffered an incomplete spinal cord injury from the jailhouse altercation resulting in a 59-68% permanent partial impairment of his whole body. *Id.* at 334. Dr. Lichtblau further stated that Plaintiff's disability would likely increase over time due to the secondary effects of aging. *Id.* Defendant also had a March 2017 report authored by Steven R. Graboff, M.D. (Doc. 208, p. 3). Dr. Graboff reviewed Mr. Houston's medical records and opined that the jail staff's delayed treatment of Plaintiff's T2 vertebrae fracture caused his paralysis to become "irreversible and permanent." (Ex. D49, p. 9).

Furthermore, defense counsel advised Defendant that Plaintiff's "prospects for recovering some ability to ambulate" was not known, but that "there [was] at least a 50% chance" Defendant would be found liable beyond MOPERM's policy limit. (Doc. 159, ¶¶ 25-26, 33(d)). Defense counsel was also concerned Plaintiff was attempting to create a bad faith claim that could have further increased Defendant's liability. *Id.* at ¶¶ 23-24, 28. Defendant requested and was denied a

substantive extension of time to respond to the settlement. (Doc. 161, ¶ 1). Ultimately, Defendant accepted the settlement offer on April 5, 2017. (Doc. 159, ¶ 38). Defendant then sent Mr. Houston a check for $2 million dated April 20, 2017, and Plaintiff subsequently filed a notice of dismissal. (Docs. 62, 204-1).[2]

On April 25, 2017, officers with the Columbia Police Department responded to a disturbance between Plaintiff and another individual at a local motel. (Ex. D50 (April 25, 2017 Body Camera Video)). Officers first spoke outside of the motel with the individual who made the call. *Id.* The individual stated in part that Plaintiff had just received $2 million. *Id.* Officers then headed into the motel to Plaintiff's room. *Id.* During the visit, Mr. Houston was captured on body camera video walking without aid. *Id.* There is no evidence he had an assistive device (such as a wheelchair) with him at any point. *Id.* Footage shows Mr. Houston answering his motel room door while standing, talking to officers, walking around his room, and packing his things. *Id.* He also eventually left the room, carrying a plastic bag filled with clothes, a small box, and a pair of sneakers in his arms as he did so. *Id.* When officers asked if he needed help carrying anything, he denied it. *Id.* Near the end of the video at least one officer can be heard referring to Plaintiff as Mr. Houston. *Id.*

Less than a year later Defendant filed its initial Rule 60(b)(3) motion to set aside the judgment (Doc. 64). Subsequently, Defendant filed an amended motion in October 2018 (Doc. 112), and the current Motion in August 2019 (Doc. 204). Defendant also filed supplemental briefing on August 13, 2019. (Doc. 208). Defendant initially sought relief from both Plaintiff and his former attorneys, but now focuses solely on Mr. Houston. (Doc. 205).

The Court held a hearing on the Motion on August 7, 2019. (Doc. 206). Richard Dubinsky, M.D., appeared via video deposition. (Doc. 212, Tr. 53:10-11). Dr. Dubinsky reviewed Plaintiff's medical records, highlighting numerous areas that showed Plaintiff could not walk in 2015 and 2016. (Tr. 61:1-10; 63:11-15; 67:3-14; 68:4-6, 22-23; 71:10-13; 72:2-9, 17-19; 72:22-73:5, 17-21; 74:20-75:6; 77:7-10, 13-15; 79:5-20; 81:18-82:2). Dr. Dubinsky noted some records suggested potential inconsistencies between the severity of Plaintiff's injuries when compared to his subjective statements. (Tr. 69:10-70:8; 80:13-81:1). Dr. Dubinsky also testified that, in his

---

[2] The clerk dismissed the claim on May 23, 2017. (Docs. 63).

medical opinion, Plaintiff had the ability to walk at the time of his April 2017 deposition. (Tr. 87:11-19). Specifically, Dr. Dubinsky opined that if an individual who suffered Plaintiff's type of injury recovered the ability to walk after surgery, it would typically take six months, but almost never longer than twelve months. (Tr. 87:21-88:14). Dr. Dubinsky explained it was "impossible" for Plaintiff–who claimed he could not walk for at least 1.5 years after surgery–to have thereafter suddenly progressed from paraplegic to independent walking within less than two months between his deposition and the body cam footage. *Id.* Dr. Dubinsky went on to state he had "never seen or heard . . . of anyone recovering that much function in such a short period of time . . . almost a year and a half after the original injury . . . . To have recovered from unable to walk to walking independently, carrying items, is unheard of within a two-month period." (Tr. 90:4-16). Lastly, MOPERM Claims Manager Rebecca Shaver also testified at the hearing. (Tr. 92:8-9, 16-93:5). She stated MOPERM was advised that Mr. Houston's claim could result in a jury award up to $10 million. (Tr. 100:17-101:2). She further testified that MOPERM would not have accepted the $2 million settlement offer if it had known Plaintiff could walk. (Tr. 102: 10-13).

Mr. Houston has not made an appearance before the Court since these allegations arose, despite repeated attempts to contact him. (Docs. 78-79, 90, 96, 98, 99, 111, 114, 119, 125, 131-32, 134, 139, 152, 164-66, 181, 185-86, 193, 195, 209, 211). Plaintiff consequently has not challenged any of the allegations brought by Defendant, and the Motion stands unopposed. Additional background on this matter is available at *Houston v. County of Boone, et al.*, 16-4204-CV-C-NKL, Doc. 182.

## II. DISCUSSION

Defendant asserts Plaintiff engaged in fraudulent conduct amounting to violations under the Federal Rules of Civil Procedure. Defendant seeks various relief from the Court under Rule 60(b) and Rule 37, including setting aside both the order of dismissal and the settlement agreement, ordering Plaintiff to repay funds obtained through the settlement, and dismissing Plaintiff's claims with prejudice. Plaintiff has not challenged these allegations. The Court first analyzes Defendant's Rule 60(b)(3) allegations and then examines the relief sought.

### 1) Defendant's Motion and Rule 60(b)(3)

Defendant claims Plaintiff's conduct amounted to fraud under Rule 60(b)(3). Specifically, Defendant alleges that Mr. Houston falsely testified during his deposition and offered false

information to medical experts and his own attorneys. (Doc. 204, ¶ 15). Defendant argues such conduct prevented a full and fair presentation of its defense. (Doc. 208, p. 6). Defendant does not claim any other individual or entity committed fraudulent acts in this matter, including Plaintiff's attorneys or medical experts.

The Eighth Circuit has explained Rule 60(b)(3) "provides for extraordinary relief which may be granted only upon an adequate showing of exceptional circumstances." *Paige v. Sandbulte*, 917 F.2d 1108, 1109 (8th Cir. 1990); (citation and internal marks omitted); *see Arnold v. Wood*, 238 F.3d 992, 998 (8th Cir. 2001) (noting a Rule 60(b) motion is not an opportunity to reargue the merits) (citation omitted). To succeed under Rule 60(b)(3), Defendant must show "with clear and convincing evidence, that the opposing party [1] engaged in a fraud or misrepresentation that [2] prevented the movant from fully and fairly presenting the case." *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 935 (8th Cir. 2006) (citation and internal marks omitted). Defendant must also have filed its Motion within a reasonable period of time. Fed. R. Civ. P. 60(c).

As an initial matter, the Court finds Defendant filed its initial Rule 60(b)(3) motion within a reasonable timeframe. "What constitutes a reasonable time is dependent on the particular facts of the case in question . . . ." *Watkins v. Lundell*, 169 F.3d 540, 544 (8th Cir. 1999) (citation omitted). Regardless, a Rule 60(b) motion "must be made . . . no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1); *see Box v. Bollinger*, No. 1:02CV105 JAR, 2014 WL 2197755, at *1 (E.D. Mo. May 27, 2014) (finding an eleven-year delay in filing was untimely).

Here, the Court is satisfied Defendant's initial motion was timely. Defendant filed its first Rule 60(b)(3) motion within one year of the clerk's dismissal of the claim. (Docs. 63, 64). Defendant waited to file this motion at least in part because of an ongoing investigation by federal law enforcement. (Doc. 159, pp. 18-19). Defendant previously noted the investigation might have changed the nature of or need for the relief requested. *Id.* Moreover, Plaintiff has not argued the issue of timeliness. The Court finds Defendant's decision to delay filing the initial motion because of an ongoing investigation was reasonable. The Motion is therefore properly before the Court.

        *i.*     *Plaintiff engaged in fraud, misrepresentation, or misconduct.*

Next, the Court finds by clear and convincing evidence that Plaintiff engaged in fraud. Plaintiff stated during his deposition that he could not walk, stand, or lean, even with assistance.

(Doc. 159, ¶ 22). He also repeated these claims of paralysis to his attorneys and medical experts. (Doc. 208, pp. 2-3, 9). However, less than six weeks after his deposition he was captured clearly on body camera footage walking without aid and carrying objects, including a plastic bag full of clothes, a box, and shoes. (Ex. D50 (April 25, 2017 Body Camera Video)). Dr. Dubinsky opined in perhaps the strongest available terms that Plaintiff could not have regained the ability to walk in less than two months after failing to do so for approximately 1.5 years post-surgery. (Tr. 87:21-88:14). He explained such a recovery was "impossible" and medically "unheard of." *Id.*; (Tr. 90:4-16). The Court is not persuaded that Plaintiff miraculously recovered in this instance. Instead, based on the evidence, it appears Plaintiff lied during his deposition to strengthen his case and make his offer of settlement look more attractive. The very nature of this lie, coupled with Dr. Dubinsky's expert medical testimony, shows Plaintiff knew and intended to fraudulently misrepresent his injuries. Plaintiff understood the true severity of his disability–or at least whether he could walk or stand–and intentionally chose to exaggerate the intensity of his impairments to his attorneys and medical experts, as well as during his deposition. Such conduct amounted to fraud.

Moreover, Plaintiff's fraud represented a significant abuse of the judicial system and cannot be otherwise excused. *Compare Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 818 F.3d 1320, 1324–25 (Fed. Cir. 2016) (reversing a district court's denial of a Rule 60(b)(3) motion partly because an expert's false testimony and a competitor's document withholding involved issues central to the case); *with Metro. St. Louis Sewer Dist.*, 440 F.3d at 936 (explaining that new analysis of evidence "d[id] not raise new facts; instead it raise[d] only new opinions and suspicions"); *Atkinson v. Prudential Prop. Co.*, 43 F.3d 367, 373 (8th Cir. 1994) (stating plaintiff did not prove defendants' failure to produce evidence in discovery was improper, at least partly because two unrebutted affidavits denied possession of the evidence or knowledge of its existence); *Harrison v. Commercial Woodworking Co.*, No. 4:08CV00082 ERW, 2008 WL 5105130, at *2 (E.D. Mo. Dec. 1, 2008) (finding that plaintiff seeking to amend his complaint to "simplify and clarify" the initial complaint, but in actuality simply eliminating his disability discrimination claim, did not amount to fraud or misrepresentation). Video of Plaintiff's ability to walk shortly after his deposition offered concrete, circumstantial proof of Plaintiff's misconduct.

Plaintiff has not offered any opposition. Accordingly, the Court finds that Defendant has shown by clear and convincing evidence that Plaintiff engaged in fraud.

> ii. *Defendant was prevented from fully and fairly presenting its case.*

Furthermore, the Court finds by clear and convincing evidence that Plaintiff's fraudulent conduct compelled Defendant to accept a settlement offer and precluded Defendant from fully and fairly presenting its case. While Defendant considered other factors when deciding whether to accept, a looming consideration was the exposure to damages at trial based primarily on Plaintiff's almost $5.7 million life care plan. (Doc. 159, ¶¶ 25-26, 33(d)). MOPERM's coverage stopped at $2 million. *Id.* at ¶ 17, 38. Defendant's calculation of potential damages at trial would likely have been far different if it had known Plaintiff could walk and carry objects without assistance. Indeed, Ms. Shaver testified MOPERM was advised that Mr. Houston's claim could result in up to a $10 million jury award. (Tr. 100:17-101:2). Ms. Shaver also stated MOPERM would not have accepted the $2 million settlement offer had it known Plaintiff could walk. (Tr. 102: 10-13). In other words, Defendant accepted the settlement because of Plaintiff's fraud. Defendant consequently did not have the opportunity to proceed to trial to fairly and fully present its case. *See Quinn v. City of Kansas City, Kan.*, 64 F. Supp. 2d 1084, 1092 (D. Kan. 1999) ("If plaintiff had not testified falsely, defendants would have had less incentive to settle the case and less risk of liability from their perspective."); *Ebersole v. Kline-Perry*, 292 F.R.D. 316, 322–23 (E.D. Va. 2013) (finding plaintiff improperly withheld evidence and made misrepresentations at trial that prevented defendant from fully presenting a defense); *cf. Anderson v. Cryovac, Inc.*, 862 F.2d 910, 925 (1st Cir. 1988), *aff'd*, 900 F.2d 388 (1st Cir. 1990).

The Court notes at least some of the voluminous medical records in this case could suggest Plaintiff was being untruthful about the intensity and severity of his injuries. For example, Dr. Dubinsky testified medical records reflected that at one point Mr. Houston lost strength between hospital visits. (Tr. 80:13-81:1). Dr. Dubinsky ascribed three possible reasons for this loss of strength: (1) a new injury; (2) muscle spasms prevented testing; or (3) Plaintiff was not giving his full effort. *Id.* Dr. Dubinsky observed that the record did not indicate any new injury. *Id.* Similarly, Dr. Dubinsky noted at another point Plaintiff kept withdrawing his foot when a physician applied pain despite claiming he did not have the ability to do so. (Tr. 69:10-70:8). Dr. Dubinsky explained it could indicate Mr. Houston was in fact able to control his foot, or it could have been due to

involuntary spasms. *Id.* Had Defendant hired medical experts to comb through Mr. Houston's medical records before settling, it too could have delved deeper into these potential discrepancies.

However, it does not appear Defendant failed to complete its due diligence in this matter. *Contra Atkinson*, 43 F.3d at 373 (noting that plaintiff "had a fair opportunity to discover [evidence withheld by defendants] simply by going through his own files"); *Halliburton Energy Servs., Inc. v. NL Indus.*, 618 F. Supp. 2d 614, 642 (S.D. Tex. 2009) ("No matter how much Halliburton protests that it did not have actual notice of the newly submitted documents during the arbitration, the fact remains that Halliburton found the documents in its own files."). Potential inconsistencies in the medical record amounted to considerably less than other evidence that reflected Plaintiff was permanently disabled, including two medical expert opinions, numerous medical records showing Plaintiff could not walk in 2015 and 2016, and Plaintiff's corroborating statements. (Tr. 61:1-10; 63:11-15; 67:3-14; 68:4-6, 22-23; 71:10-13; 72:2-9, 17-19; 72:22-73:5, 17-21; 74:20-75:6; 77:7-10, 13-15; 79:5-20; 81:18-82:2); (Ex. D48 p. 334 (Summary Report)); (Ex. D49, p.9); (Doc. 159, ¶ 22). A handful of possible inconsistencies buried in a voluminous medical record did not erase convincing evidence of Mr. Houston's permanent disability.

Additionally, Plaintiff's short deadline created a pressing time-crunch. This case was still in the early stages of litigation when Mr. Houston produced a settlement offer. Defendant had very little time to analyze this information and decide whether refusing the offer was worth the potentially severe exposure at trial, much less conduct a thorough, wholly independent investigation into Plaintiff's claims. Indeed, Defendant understood this short time period as an attempt to create a subsequent bad faith claim that could result in liability well beyond MOPERM's limit. (Doc. 159, ¶¶ 23-24, 28). Defense counsel advised that Defendant had potentially a 50% chance of losing at trial and being found liable beyond MOPERM's policy limit. *Id.* at ¶¶ 23-26, 28, 33(d). And Defendant was denied its request for a substantive extension of time to consider the offer. (Doc. 161, ¶ 1). Plaintiff's fraud painted a picture far different from reality that ultimately provoked Defendant into accepting an early settlement offer. Unlike *Atkinson*, here Defendant could not have uncovered Plaintiff's fraud "simply by going through [its] own files." *Atkinson*, 43 F.3d at 373.

In sum, the Court finds by clear and convincing evidence that Plaintiff's fraudulent conduct prevented Defendant from a full and fair presentation of its case. This case was so thoroughly

tainted by Plaintiff's misconduct that the Motion must be granted. As a consequence, the Court next turns to the relief sought by Defendant.

### 2) Defendant's Requested Relief

Defendant asks the Court for the following relief: (1) set aside the Clerk's Order of Dismissal in this matter; (2) set aside the settlement agreement, order Plaintiff to return $1,276,048.51 obtained from Defendant's insurer, and order Plaintiff to not otherwise dispose of such funds; (3) dismiss Plaintiff's claims against Defendant with prejudice; and (4) award costs and expenses, including legal fees, to Defendant expended in pursuing its Motion.[3]

Under Federal Rule of Civil Procedure 60(b)(3), the Court may "relieve a party . . . from a final judgment, order, or proceeding for . . . fraud . . . misrepresentation, or misconduct by an opposing party." The Court examines and recommends rulings for each type of requested relief below.

*i.  The Court recommends setting aside the Clerk's Order of Dismissal.*

First, the Court recommends setting aside the Clerk's Order of Dismissal. Rule 60(b) allows the Court to set aside a final judgment if an opposing party commits fraud. The Court has found Plaintiff's conduct amounted to fraud under Rule 60(b)(3). As a consequence, the Court finds the order of dismissal should be set aside.

*ii. The Court recommends setting aside the settlement agreement and ordering Plaintiff repay the settlement funds.*

Second, the Court recommends setting aside the settlement agreement, ordering Plaintiff to return $1,276,048.51 to Defendant, and ordering Plaintiff not to otherwise dispose of the settlement funds. The Court believes "a final judgment" under Rule 60(b) encompasses a voluntary settlement agreement, which therefore allows the Court to set the settlement aside.

In *White v. Natl'n Football League*, the Eighth Circuit found a stipulation of dismissal by the parties constituted a "final judgment" under Rule 60(b). 756 F.3d 585, 596 (8th Cir. 2014). The court reached this conclusion by drawing numerous comparisons between a stipulation of dismissal and an offer of judgment, explaining the two were identical "[i]n nearly all relevant respects." *Id.* at 595. The Eighth Circuit went on to note that other federal rules, such as Fed. R. Civ. P. 68, "explicitly use 'judgment' to refer to a settlement between a plaintiff and defendant."

---

[3] The Court has reordered Defendant's requested relief as presented in its Motion.

*Id.* The Eighth Circuit reasoned that, because an offer of judgment was defined as a "judgment" in certain federal rules and nearly identical to a stipulation of dismissal, it naturally followed that a Rule 60(b) "judgment" encompassed the parties' stipulation of dismissal. *Id.*

Here, the Court believes it has the authority to set aside the settlement. Just as a stipulation of dismissal amounts to a "final judgment" under Rule 60(b), so too does it appear a settlement agreement plainly falls within the definition of a Rule 60(b) "final judgment." *See id.* at 596. Accordingly, the Court believes the settlement agreement should be set aside based on Plaintiff's fraudulent conduct under Rule 60(b)(3).

Consequently, the Court recommends ordering Plaintiff to repay $1,276,048.51 to Defendant, which represents the settlement funds received by Mr. Houston. Plaintiff should be further ordered not to otherwise dispose of such funds. The Court has the authority to do so based upon the "longstanding legal principle that a person who has conferred a benefit upon another in compliance with a judgment . . . is entitled to restitution if the judgment is reversed or set aside, unless restitution would be inequitable." *See Mohamed v. Kerr*, 91 F.3d 1124, 1126 (8th Cir. 1996) (citation and internal marks omitted) (requiring Plaintiff's counsel to return contingent attorney's fees after being reversed on appeal); *see also In re Popkin & Stern*, 263 B.R. 885, 890 (B.A.P. 8th Cir. 2001) ("[C]ourts have universally held that where a judgment is reversed, appellants are entitled to restitution of the benefits received by the other party . . . .") (citations omitted). The Court does not believe ordering Plaintiff to return over $1.2 million obtained through fraud is inequitable in this case. Plaintiff should therefore be ordered to repay the settlement funds to Defendant.

    *iii.*    *The Court should dismiss Plaintiff's claims with prejudice.*

Third, the Court recommends dismissing Plaintiff's claims against Defendant with prejudice. The Court has authority to do so through its inherent authority and Rule 37. "When a litigant's conduct abuses the judicial process, dismissal of a lawsuit is a remedy within the inherent power of the [C]ourt." *Martin v. DaimlerChrysler Corp.*, 251 F.3d 691, 694 (8th Cir. 2001) (citing *Pope v. Federal Express Corp.*, 974 F.2d 982, 984 (8th Cir.1992)). Relatedly, Rule 37 allows for such relief after a discovery violation. Fed. R. Civ. P. 37(c)(1)(C) (failing to offer supplemental or corrective information as required by Rule 26(e) allows the Court to "strike[] the pleadings in whole or in part" or "dismiss[] the action or proceeding in whole or in part") (citing *id.* at

(b)(2)(A)(iii., v.)); *see Chrysler Corp. v. Carey*, 186 F.3d 1016, 1021 (8th Cir. 1999) (upholding dismissal after a party "repeatedly lied during the discovery process, denying the existence of conversations and documents which had in fact occurred and did exist.")

Here, Plaintiff abused the judicial process and violated Rule 26(e) by failing to supplement or offer corrective information. As discussed above, Plaintiff testified under oath at his deposition that he could not walk. (Doc. 159, ¶ 22). Less than six weeks later, Mr. Houston was seen walking unassisted and carrying objects without aid. (Ex. D50 (April 25, 2017 Body Camera Video)). According to medical expert testimony, he was able to walk at the time of his deposition. (Tr. 87:11-19). Plaintiff lied while under oath and provided false or misleading information to his own attorneys and experts hired on his behalf. Mr. Houston repeatedly misrepresented key facts to the opposing party and the Court. *Chrysler Corp*, 186 F.3d at 1021 (explaining defendants' conduct was "far more egregious [] than simple foot-dragging or even making unfounded challenges to discovery requests"). Dismissal is necessary in part because because no other sanction can "remedy the lack of integrity in the case being presented to the jury." *Id.* at 1022. Mr. Houston failed to offer corrective or supplemental information in violation of Rule 26(e), which consequently allows the Court to sanction Plaintiff through Rule 37(c)(1)(C). The Court may also use its inherent authority to sanction Plaintiff based on his abuse of the judicial process. Accordingly, the Court finds that Mr. Houston's claims should be dismissed with prejudice.

> iv. *Plaintiff should be ordered to pay Defendant's reasonable expenses from pursuing its Motion, including attorney's fees.*

Lastly, the Court recommends ordering Plaintiff to pay reasonable expenses, including attorney's fees, stemming from his failure to follow Rule 26(e). Specifically, Plaintiff should be ordered to pay reasonable costs and attorney's fees accumulated by Defendant in pursuing the Motion.[4] Defendant argues costs and expenses are appropriate as a sanction under Rule 37(c)(1)(A) because Plaintiff violated Rule 26(e). *Id.*

A party who "fails to provide information . . . required by Rule 26(a) or (e)" may be (among other things) required to pay "reasonable expenses, including attorney's fees, caused by the

---

[4] Defendant initially argued the Court had authority to award such costs and expenses under Rule 60(b). (Doc. 204, ¶ 23). However, in supplemental briefing Defendant correctly stated that a Rule 60(b) "is not the proper vehicle to seek additional affirmative relief." (Doc. 207, pp. 10-11) (citing *Adduono v. World Hockey Ass'n*, 824 F.2d 617, 620 (8th Cir. 1987)).

failure." Fed. R. Civ. P. 37(c)(1)(a). As previously discussed, Plaintiff violated Rule 26(e). Plaintiff's failure to follow Rule 26(e) led Defendant to accept a settlement offer and subsequently pursue its Motion under Rule 60(b)(3) to set aside the judgment. Accordingly, the Court recommends awarding reasonable expenses and attorney's fees accrued in pursuing the Motion to Defendant in addition to the sanctions outlined above.

### III. CONCLUSION

For the reasons above, the Court concludes that Defendant's arguments regarding Plaintiff's misconduct are with merit, and the Motion should be granted.

Accordingly, IT IS THEREFORE RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order GRANTING Defendant's Second Amended Motion for Relief from Final Judgment, Order, or Proceedings, and Motion for Injunction (Doc. 204) as set forth herein.

Each party has fourteen (14) days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in the Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

Dated this 23rd day of August, 2019, at Jefferson City, Missouri.

*Willie J. Epps, Jr.*

Willie J. Epps, Jr.
United States Magistrate Judge